

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

OCT 11 2007

DAVID J. MALAND, CLERK
BY
DEPUTY_____

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:07-CV-569 -TH |
| | § | **JURY** |
| TE PRODUCTS PIPELINE COMPANY, LLC | § | |
| and TEPPCO CRUDE PIPELINE, LLC., | § | |
| | § | |
| *Defendants.* | § | |

## CONSENT DECREE

Before the Court is an *Unopposed Motion for Entry of Consent Decree* [Clerk's Docket No. 8] filed September 25, 2007. Having considered the motion, and taking into account that the motion is unopposed, the Court is of the opinion that the motion should be granted and the consent decree entered.

**IT IS THEREFORE ORDERED** that the *Unopposed Motion for Entry of Consent Decree* [Clerk's Docket No. 8] is in all things **GRANTED.**

**IT IS FURTHER ORDERED** that the attached consent decree is hereby **ENTERED OF RECORD.**

**IT IS FURTHER ORDERED** that the clerk os **DIRECTED** to close this case file.

**SO ORDERED.**

**SIGNED** this the 10th day of October, 2007.

_____

Thad Heartfield
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>TE PRODUCTS PIPELINE COMPANY, LLC §<br>and TEPPCO CRUDE PIPELINE , LLC §<br>§<br>Defendants. §<br>§ | Civil Action No.   1 1 0 7 C V 0 5 6 9 |

## CONSENT DECREE

A.    WHEREAS, Plaintiff, the United States of America, on behalf of the United States

Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with

this Consent Decree against related Defendants, TE Products Pipeline Company, LLC and

TEPPCO Crude Pipeline, LLC (collectively "TEPPCO"). The Complaint alleges that TEPPCO is

civilly liable for penalties and injunctive relief pursuant to the Clean Water Act ("CWA"), 33

U.S.C. §1251 et seq., with respect to four discharges of oil from the TEPPCO Pipeline System

during the period November 2001 to May 2005, as further described herein;

B.    WHEREAS, on or about November 27, 2001, approximately 2,575 barrels of Jet A

Kerosene (Jet Fuel) discharged from the P-62 pipeline in the TEPPCO Pipeline System into

tributaries of the Neches River and the Neches River. The release occurred at mile post 7.66,

approximately 7 miles east of Beaumont, 4 miles southeast of Vidor, in Orange County, Texas

(the "Vidor Discharge"). This discharge was caused by disbonded coating and external corrosion on the pipeline;

C.      WHEREAS, on or about March 12, 2004, approximately 500 barrels of unleaded gasoline discharged from the P-2 pipeline in the TEPPCO Pipeline System (east of the Fordyce Pump Station) into an unnamed tributary of Moro Creek, which flows into the Sabine River. The discharge occurred five miles northwest of Kingsland in Cleveland County, Arkansas (the "Fordyce Discharge"). This discharge was caused by corrosion of a ½-inch bleeder line that was part of a 20-inch pipeline block valve used to equalize pressure across the valve;

D.      WHEREAS, on or about February 28, 2005, approximately 2,497 barrels of Jet A Kerosene discharged from the 14-inch P-62 pipeline in the TEPPCO Pipeline System and reached Big Cow Creek, a tributary of the Sabine River.  The release occurred six miles south of Newton, Texas, (the "Newton Discharge") at TEPPCO's Newton Pump Station. The discharge was caused by operator error (i.e., the over-tightening of a coupling at a 3/8-inch cooling line at the top of a 14-inch mainline pump).

E.      WHEREAS, on or about May 13, 2005, approximately 898 barrels of crude oil discharged from the Seaway Pipeline, a pipeline system operated by TEPPCO, into an unnamed tributary to Eastman Creek, and into Eastman Creek, which is a tributary of the Red River. The release occurred four miles southeast from Colbert, Oklahoma (the "Colbert Discharge"). The discharge was caused by a 6-inch longitudinal seam split on a 30-inch pipeline that resulted from a stress crack that may have been induced by conditions occurring during rail transport, and enlarged by pressure-cycle-induced stresses over years of operation of the pipe.

F.      WHEREAS, TEPPCO represents that it has taken the following steps to decrease the likelihood of other such discharges:

-2-

1. Conducted a Magnetic Flux Leakage (MFL) In-Line Inspection (ILI) of the TEPPCO Pipeline System from Beaumont, Texas to Many, Louisiana in 2001. This investigation disclosed 102 anomalies along the pipeline, all of which were excavated and repaired in 2001.

2. Re-inspected the P-62 pipeline in 2004, using two new Magpie ILIs: a new MFL tool and a Pipe Deformation Tool. TEPPCO compared the 2004 and 2001 MFL ILI results and confirmed that the 2001 repairs were in favorable condition. TEPPCO investigated, excavated and repaired 83 additional metal loss and mill anomalies on the P-62 Pipeline.

3. Established repair criteria for the TEPPCO Pipeline System that are more stringent than the Integrity Management Plan (IMP) requirements at 49 CFR Part 195.

4. Created a system to integrate and overlay all data for the entire TEPPCO Pipeline System from close interval surveys, ILI surveys, excavations, visual inspections and other pipeline integrity evaluation into a Pipeline Open Database System to identify areas along the pipeline system where corrosion, mechanical damage, disbonded coating or other anomalies might exist that require further investigation, repair or replacement to prevent future discharges.

5. Removed unnecessary bleeder lines and incorporated subsurface pipelines into its inspection process.

6. Amended its operator training to re-educate operators on proper tightening of couplings and the risks of over-tightening couplings.

7. Conducted Deformation Tool, Ultrasonic Tool and MFL tool inspections on the Seaway Pipeline and excavated and repaired or replaced pipe at 160 locations.

G.     WHEREAS, TEPPCO does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

-3-

H.      WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before taking testimony and without the adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and 2717(b), and Sections 309(b), 311(b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 1321(n). The Court has personal jurisdiction over the Parties to this Consent Decree. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), because TE Products Pipeline Company, LLC and TEPPCO Crude Pipeline, LLC do business in this District and because a substantial part of the events giving rise to the claims occurred in this District as determined by 28 U.S.C. § 1391(c). For the purposes of this Consent Decree, or any action to enforce this Consent Decree, TEPPCO consents to the Court's jurisdiction over this Decree or such action and over TEPPCO, and consents to venue in this judicial district.

2.      Notice of the commencement of this action has been given to the States of Texas, Oklahoma and Arkansas, as required by Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding on the United States and on Defendants, and any successors, assigns or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of any Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligations to ensure that the terms of the Decree are implemented. Defendants' transfer of ownership or operation of any portion of the Facility to any other person must be conditioned on the transferee's agreement to undertake the obligations required by Section V (Injunctive Relief) of this Consent Decree, as provided in a written agreement between Defendants and the proposed transferee, enforceable by the United States as third-party beneficiary of such agreement. At least thirty (30) days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 6 and to the United States Department of Justice in accordance with Section XII of this Decree (Notices). Any attempt to transfer ownership or operation of all or a portion of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

5.      TEPPCO shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, including any contractor retained to perform work required under this Consent Decree. TEPPCO shall condition any contract to perform such work on performance of the work in conformity with the terms of this Consent Decree.

-5-

6.   In any action to enforce this Consent Decree, TEPPCO shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

7.   Terms used in this Consent Decree that are defined or used in the CWA shall have the meanings assigned to them in that statute, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

A.   "Complaint" shall mean the complaint filed by the United States in this action.

B.   "Consent Decree" or "Decree" shall mean this document.

C.   "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

D.   "Defendants" shall mean TE Products Pipeline Company, LLC  and TEPPCO Crude Pipeline, LLC (collectively "TEPPCO").

E.   "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

F.   "Parties" shall mean the United States and TEPPCO.

G.   "Plaintiff" shall mean the United States.

H.   "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

-6-

I.          "Spills" shall mean the Vidor Discharge, the Fordyce Discharge, the Newton Discharge, and the Colbert Discharge.

J.          "TEPPCO Pipeline System" shall mean pipeline owned and operated by TEPPCO, known as the "P-62 pipeline" that runs from Beaumont, Texas to El Dorado, Arkansas, the pipeline owned and operated by TEPPCO, known as the "P-2 pipeline" that runs parallel to the P-62 pipeline from Beaumont, Texas to Seymour, Indiana, and the pipeline operated by TEPPCO known as the "Seaway Pipeline" that transports crude oil from Freeport, Texas to Cushing, Oklahoma.

K.          "TEPPCO" shall mean, for all purposes under this Decree, TE Products Pipeline Company, LLC  and TEPPCO Crude Pipeline, LLC, collectively, and Defendants are jointly and severally liable for the obligations of TEPPCO set forth herein.

L.          "United States" shall mean the United States of America, acting on behalf of EPA.

### IV.  CIVIL PENALTIES

8.     Within fifteen (15) days after TEPPCO  receives notice that the Consent Decree is lodged with the Court, TEPPCO shall deposit the sum of two million eight hundred and sixty five thousand dollars ($2,865,000) into an escrow account bearing interest on commercially reasonable terms, in a federally-chartered bank (the "Escrow Account"), as a civil penalty for violations of the CWA.  If the Consent Decree is not entered by the Court and the time for any appeal of the decision has run, or if the Court's denial of entry is upheld on appeal, the monies placed in escrow, together with the interest thereon, shall be returned to TEPPCO.  If the Consent

-7-

Decree is entered by the Court, TEPPCO shall, within 15 days thereof, cause the monies in the

Escrow Account, including interest, to be paid to the United States in accordance with

subparagraph (a) below:

                 (a)  Payment shall be made by Fedwire Electronic Funds Transfer

("EFT") to the United States Department of Justice, in accordance with instructions provided to

TEPPCO by the Financial Litigation Unit of the Office of the United States Attorney for the

Eastern District of Texas. Such monies are to be deposited in the Oil Spill Liability Trust Fund.

The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-

5-1-1-08194, and U.S. Coast Guard reference number FPN NO2027, and shall specify that the

payments are made toward CWA civil penalties to be deposited into the Oil Spill Liability Trust

Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8).  Any funds received after

11:00 a..m. Eastern Time shall be credited on the next business day.  TEPPCO shall

simultaneously provide to the United States notice of this payment by submitting written notice of

the same and a copy of any transmittal documentation to the United States in accordance with

Section XI of this Consent Decree (Notice), and to the following:

                 LT Carolyn Leonard-Cho
                 National Pollution Funds Center
                 4200 Wilson Boulevard, Suite 1000
                 Arlington, Virginia 22203-1804

                 Commander Thomas Beistle
                 United States Coast Guard
                 Office of Claims and Litigation
                 2100 Second Street, S.W.
                 Washington, D.C. 20593-0001

## V. INJUNCTIVE RELIEF

9.      No later than March 31, 2007, TEPPCO shall begin a close interval survey ("CIS")

of the P-62 Segment of the TEPPCO Pipeline System, from Beaumont, Texas to Many,

Louisiana, in accordance with National Association of Corrosion Engineers ("NACE") standard

RP0169-96 and in accordance with the TEPPCO CIS Plan attached hereto as Attachment A.

TEPPCO shall complete this CIS no later than December 31, 2007.

10.     For each location where the cathodic protection fails to conform to the standard

set forth in NACE RP1069-96, TEPPCO will take corrective action to bring the cathodic

protection at such location into compliance with that standard within one hundred and fifty (150)

days of the date of the CIS for each location, except for interference currents, which shall be

eliminated as soon as reasonably possible, but no later than forty-five (45) days after the date of

the CIS for such location.  TEPPCO shall verify that these measures comply with the NACE

standard through pipe-to-soil readings measured in accordance with NACE standard RP0169-96.

11.     No later than March 31, 2008, TEPPCO shall submit a CIS Report on the

completion of the CIS to the United States, consistent with Section VI (Reporting Requirements).

The CIS Report shall summarize the results of the survey and shall include data, photographic

documentation, and recommendations for corrective action, if any.  TEPPCO shall submit a

follow-up report on corrective action taken under paragraph 10 on a quarterly basis for all CIS

corrective action work completed within the prior quarter.

12.     No later than January 2, 2007, TEPPCO shall initiate installation of remote

surveillance cameras at the Newton and Many Pump Stations located in Newton, Texas and

-9-

Many, Louisiana, respectively. TEPPCO shall complete the camera installations no later than June 30, 2007. The remote surveillance cameras must provide around-the-clock site surveillance of the Newton and Many Pump Stations by the Houston Pipeline Control center and the field operation centers located in Beaumont, Texas and El Dorado, Arkansas. TEPPCO shall ensure that the number and location of the cameras shall provide constant monitoring of pipeline systems and provide surveillance of the pipeline system equipment at the Newton and Many Pump Stations.

13.     No later than September 1, 2007, TEPPCO shall submit a summary report of the camera installation to the United States consistent with Section VI (Reporting Requirements). This report shall identify the type, number and location of cameras installed, and the operation and maintenance plan for the cameras, and shall provide photographs of the installed cameras.

14.     No later than November 1, 2006, TEPPCO shall initiate an update of the Supervisory Control and Data Acquisition ('SCADA") system on the TEPPCO Pipeline System by installing leak detection functionality based on a computation pipeline model (CPM) software system. TEPPCO shall complete the installation of the CPM and have it operational no later than November 1, 2007. The system will include a computational model that compares observed operating parameters such as pressures, flow rates, and temperatures as reported through the SCADA system to computed values on intervals of one minute. The objective of the update is to enable TEPPCO to more precisely monitor and balance the volume of product in the pipeline with the integration of pressure and temperature data to monitor pipeline pressure deviations, which can be indicators of leaks or spills from the pipeline.

-10-

15.     No later than March 31, 2008, TEPPCO shall submit a summary report of the

SCADA system update to the United States, consistent with Section VI (Reporting

Requirements). This report shall document completion of the CPM installation procedure.

### VI: REPORTING REQUIREMENTS

16.     TEPPCO shall submit all reports to the persons designated in Section XI of this

Consent Decree (Notices).

17.     Each report submitted by TEPPCO under this Section shall be signed by a

responsible corporate officer or a duly authorized representative of that officer and shall include

the following certification:

> I certify under penalty of law that I have examined and am familiar with the information submitted
> in this document and all attachments and that this document and its attachments were prepared
> either by me personally or under my direction or supervision in a manner designed to ensure that
> qualified and knowledgeable personnel properly gather and present the information contained
> therein. I further certify, based on personal knowledge or on my inquiry of those individuals
> immediately responsible for obtaining the information, that the information is true, accurate and
> complete. I am aware that there are significant penalties for submitting false information, including
> the possibility of fines and imprisonment.

18.     Defendants shall retain all underlying documents from which they have compiled

any report or other submission required by Section V of this Consent Decree until three years

after termination of the Decree.

19.     The reporting requirements of this Consent Decree do not relieve TEPPCO of any

reporting obligations required by the CWA, or implementing regulations, or by any other federal,

state, or local law, regulation, or requirement.

20.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

### VII. STIPULATED PENALTIES

21.     If TEPPCO fails to pay the civil penalty and interest required under Section IV (Civil Penalties) when due, TEPPCO shall pay a stipulated penalty of fifteen hundred dollars ($1,500) per day for each day that the payment is late. Late payment of the obligations stated in Section IV (Civil Penalties) shall be made in accordance with payment instructions in that Section. Stipulated Penalties under this Paragraph shall be paid as stated herein. All transmittal correspondence shall state that any such payment is for late payment of the settlement payments due under this Consent Decree, or for stipulated penalties, as applicable. Payments of stipulated penalties under this Paragraph shall be made in accordance with the payment instructions in Paragraph 26.

22.     · TEPPCO shall be liable for Stipulated Penalties for all other violations of this Consent Decree, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any injunctive relief, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree. Stipulated Penalties under this Paragraph shall be paid in accordance with Paragraph 26 below:

| Penalty Per Violation Per Day: | Period of Noncompliance: |
| --- | --- |
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $2,000 | 31st day and beyond |

23.     Stipulated Penalties under this Section shall begin to accrue on the day after performance is due, and shall continue to accrue until performance is satisfactorily completed. Stipulated Penalties shall accrue simultaneously for separate violations of this Consent Decree. TEPPCO shall pay any Stipulated Penalty within thirty (30) days of receiving a written demand from the United States.

24.     The United States may, in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due to it under this Consent Decree.

25.     Stipulated Penalties shall continue to accrue as provided in Paragraphs 21 and 22, above, during any Dispute Resolution, with interest on accrued stipulated penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

A.      If the dispute is resolved by agreement, TEPPCO shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) days of the effective date of that agreement;

B.      If the dispute is submitted to the Court and the United States prevails in whole or in part, TEPPCO shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) days of receiving the Court's decision or order, except as provided in Subparagraph C, below;

C.      If any Party appeals the District Court's decision, TEPPCO shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) days of receiving the final appellate court decision.

-13-

26.     TEPPCO shall, when a stipulated penalty is demanded, pay the stipulated penalty either by EFT, in accordance with instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Texas, or by certified or cashier's check in the amount due, payable to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1-08194, and delivered to:

> United States Attorney, Financial Litigation Unit
> Eastern District of Texas
> 350 Magnolia Avenue, Suite 150
> Beaumont, TX 77701

Payment of stipulated penalties shall be accompanied by transmittal correspondence that specifies that the payment is for stipulated penalties due under this Decree and shall reference DOJ No.90-5-1-1-08194 and the case name and number, and by notice to the United States as provided in Section XII (Notices).

27.     TEPPCO shall not deduct Stipulated Penalties paid under this Section in calculating federal income tax.

28.     If TEPPCO fails to pay stipulated penalties according to the terms of this Consent Decree, TEPPCO shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

29.     Subject to the provisions of Section X of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for TEPPCO' violation of this Consent Decree or applicable law.

## VIII.  FORCE MAJEURE

30.     A "force majeure event" is any event beyond the control of TEPPCO, its

contractors, or any entity controlled by TEPPCO that delays the performance of any obligation

under this Consent Decree despite TEPPCO's best efforts to fulfill the obligation. "Best efforts"

includes anticipating any potential force majeure event and addressing the effects of any such

event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay

to the greatest extent possible. "Force Majeure" does not include TEPPCO's financial inability to

perform any obligation under this Consent Decree.

31.     TEPPCO shall provide notice verbally or by electronic or facsimile transmission

to EPA as soon as possible, but not later than 72 hours after the time TEPPCO first knew of, or by

the exercise of due diligence, should have known of, a claimed force majeure event.  TEPPCO

shall also provide written notice, as provided in Section XII of this Consent Decree (Notices),

within seven days of the time TEPPCO first knew of, or by the exercise of due diligence, should

have known of, the event.  The notice shall state the anticipated duration of any delay; its

cause(s); TEPPCO's past and proposed actions to prevent or minimize any delay; a schedule for

carrying out those actions; and TEPPCO's rationale for attributing any delay to a force majeure

event.  Failure to provide verbal and written notice as required by this Paragraph shall preclude

TEPPCO from asserting any claim of force majeure.

32.     If the United States agrees that a force majeure event has occurred, the United

States may agree to extend the time for TEPPCO to perform the affected requirements for the

time necessary to complete those obligations.  An extension of time to perform the obligations

-15-

affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XV of this Consent Decree (Modification) and is not a material change under that Section.

33.     If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by TEPPCO, the United States' position shall be binding, unless TEPPCO invokes Dispute Resolution under Section IX of this Consent Decree. In any such dispute, TEPPCO bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event, that TEPPCO gave the notice required by Paragraph 31, that the force majeure event caused any delay TEPPCO claims was attributable to that event, and that TEPPCO exercised best efforts to prevent or minimize any delay caused by the event.

## IX. DISPUTE RESOLUTION

34.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, such procedures shall not apply to actions by the United States to enforce obligations of TEPPCO under this Consent Decree that have not been disputed in accordance with this Section.

35.     Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations between the United States and TEPPCO. The dispute shall be considered to have arisen when TEPPCO sends a written notice of dispute, as provided in

Section XII of this Decree (Notices). Such notice of dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty-one (21) days from the date the dispute arises, unless that period is modified by written agreement. If informal negotiations are unsuccessful, then the United States' position shall control unless TEPPCO files with the court a petition to resolve the dispute within thirty (30) days after the conclusion of the informal negotiation period. In any dispute under this Paragraph, TEPPCO shall bear the burden of demonstrating that its position clearly complies with this Consent Decree, the CWA, and any other applicable law, and that TEPPCO is entitled to relief under applicable law.

36.     The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of TEPPCO under this Consent Decree not directly in dispute. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 25, above. If TEPPCO does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section VI (Stipulated Penalties).

## X. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

37.     Effective on TEPPCO's performance of its payment obligations set forth in Section IV (Civil Penalties), and on its full and satisfactory completion of its obligations under Section V (Injunctive Relief), this Consent Decree resolves TEPPCO's liability for the civil claims of the United States for the violations of the CWA alleged in the Complaint filed in this action.

-17-

38.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under the CWA, or under other federal or state laws, regulations, or permit conditions, except as expressly specified herein.

39.     In any subsequent administrative or judicial proceeding initiated by the United States for unreimbursed costs, damages, cleanup, remediation, or other appropriate relief relating to TEPPCO or the Spills, TEPPCO shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based on any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.

40.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. TEPPCO is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, orders, contracts and permits; TEPPCO's compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, orders, contracts or permits. The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that TEPPCO's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, or with any other provisions of federal, state, or local laws, regulations, orders, contracts or permits.

41.     This Consent Decree does not limit or affect the rights of TEPPCO or of the United States against any third parties that are not party to this Consent Decree, nor does it limit

-18-

the rights of third parties that are not party to this Consent Decree against TEPPCO, except as

otherwise provided by law.

42.     This Consent Decree shall not be construed to create rights in, or grant any cause

of action to, any third party that is not party to this Consent Decree.

43.     TEPPCO hereby covenants not to sue and agrees not to assert any claims related to

the Spills, or response activities in connection with the Spills, against the United States pursuant

to the CWA or any other federal law, state law, or regulation including, but not limited to, any

direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, or pursuant to

any other provision of law.

44.     This Consent Decree is without prejudice to the rights of the United States against

TEPPCO with respect to all matters other than those expressly specified in Paragraph 37,

including, but not limited to, the following:

        A.            claims based on a failure of TEPPCO to meet a requirement of this

Consent Decree;

        B.            any and all criminal liability;

        C.            past, present, or future releases, discharges, or discharges of oil

other than the Spills described in the Complaint;

        D.            reimbursement for any disbursements from the federal Oil Spill

Liability Trust Fund arising from the Spills or any other related incident, pursuant to the Oil

Pollution Act (OPA), including for subrogated claims under Section 1015 of OPA, 33 U.S.C. §

2715.

-19-

## XI. COSTS

45.     The Parties shall bear their own costs of this action, including attorneys' fees,

except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to enforce this Consent Decree.

## XII. NOTICES

46.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and addressed

as follows:

As to the United States:

As to U.S. Department of Justice:

> Chief
> (Re: 90-5-1-1-08194 )
> Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Ben Franklin Station
> Washington, D.C.  20044-7611

As to EPA Region 6:

> OPA Enforcement Coordinator
> U.S. Environmental Protection Agency, Region 6, 6SF-PC
> 1445 Ross Avenue
> Dallas, TX 75202
>
> Amy Salinas
> Assistant Regional Counsel
> U.S. Environmental Protection Agency, Region 6
> 1445 Ross Avenue
> Dallas, TX 75202

-20-

To receive verbal notification as required by this Decree: 214-665-2296

As to TEPPCO:

> Patricia A. Totten
> General Counsel
> TEPPCO, LP
> 1100 Louisiana, Suite 1300
> PO Box 2521
> Houston, TX 77252-2521

To receive verbal notification as required by this Decree: 713-381-3939

47.     Either Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

48.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

### XIII. EFFECTIVE DATE

49.     The Effective Date of this Consent Decree shall be the date on which this Consent Decree is entered by the Court.

-21-

### XIV. RETENTION OF JURISDICTION

50.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections VIII (Dispute Resolution) and XV (Modification), or effectuating or enforcing compliance with the terms of this Decree.

### XV. MODIFICATION

51.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any term of this Decree, it shall be effective only on approval by the Court.

### XVI. TERMINATION

52.     After TEPPCO has completed performance of its obligations required by this Decree, including payments under Sections IV (Civil Penalties) of this Decree, any accrued Stipulated Penalties under Section VI, and Injunctive Relief under Section V, and no sooner than two (2) years after the Effective Date of this Consent Decree, TEPPCO may submit to the United States in writing a request for termination, stating that TEPPCO has satisfied those requirements and all other requisite conditions for termination of the Decree, together with all necessary supporting documentation.

53.     If the United States agrees that the Decree may be terminated, the United States shall file a motion or a joint stipulation for termination of the Decree. If the United States does not agree that the Decree may be terminated, TEPPCO may invoke dispute resolution under Section IX of this Decree. However, TEPPCO shall not seek Dispute Resolution of any dispute until ninety (90) days after service of its Request for Termination. The United States may, upon notice to TEPPCO, move to terminate the Decree after TEPPCO has completed the obligations required by Sections IV, V and VI of this Decree.

-22-

## XVII.  PUBLIC PARTICIPATION

54.     This Consent Decree shall be lodged with the Court for a period of not less than
thirty (30) days for public notice and comment, consistent with the procedures set forth in 28
C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the
comments regarding the Consent Decree disclose facts or considerations indicating that the
Consent Decree is inappropriate, improper, or inadequate.  TEPPCO agrees not to oppose entry of
this Consent Decree by the Court or to challenge any provision of the Decree, unless the United
States has notified TEPPCO in writing that it no longer supports entry of the Decree.  TEPPCO
consents to entry of this Consent Decree without further notice.

## XVIII.  SIGNATORIES/SERVICE

55.     The Assistant Attorney General for the Environment and Natural Resources
Division of the Department of Justice, on behalf of the United States and each undersigned
representative of TEPPCO certifies that he or she is fully authorized to enter into the terms and
conditions of this Consent Decree and to execute and legally bind the Party he or she represents to
the terms of this Decree.

56.     This Consent Decree may be signed in counterparts, and such counterpart
signature pages shall be given full force and effect.

57.     TEPPCO agrees to accept service of process by mail with respect to all matters
arising under or relating to this Consent Decree and to waive the formal service requirements set
forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this
Court including, but not limited to, service of a summons.

## XIX.  INTEGRATION

58.     This Consent Decree constitutes the final, complete, and exclusive agreement and
understanding among the Parties with respect to the settlement embodied in the Decree and
supersedes all prior agreements and understandings, whether verbal or written.  No other

-23-

document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XX. FINAL JUDGMENT

59.     On approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the United States and Defendants.

60.     The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment.

Signature Page to Consent Decree in U.S. v. TE Products Pipeline Company, LLC et. al (E.D. Tex.)

**FOR UNITED STATES UNITED STATES OF AMERICA:**

JOHN C. CRUDEN
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530

KENNETH G. LONG
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
202-514-2840

-25-

Signature Page to Consent Decree in U.S. v. TE Products Pipeline Company, LLC et. al (E.D. Tex.)

FOR UNITED STATES UNITED STATES OF AMERICA (continued):


JOHN L. RATCLIFFE, USA
United States Attorney
Eastern District of Texas


MICHAEL LOCKHART
Assistant United States Attorney
350 Magnolia Avenue, Suite 150
Beaumont, TX 77701-2237
409-839-2538

Signature Page to Consent Decree in U.S. v. TE Products Pipeline Company, LLC et. al **(E.D. Tex.)**

## FOR THE ENVIRONMENTAL PROTECTION AGENCY:

RICHARD E. GREENE
Regional Administrator
U.S. Environmental Protection Agency, Region 6

Dallas, TX 75202

Of Counsel:

AMY SALINAS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue

Dallas, TX 75202

-27-

Signature Page to Consent Decree in U.S. v. TE Products Pipeline Company, LLC et. al **(E.D. Tex.)**

**FOR THE ENVIRONMENTAL PROTECTION AGENCY(continued):**

GRANTA Y. NAKAYAMA
Assistant Administrator for Office of
Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Washington, D.C.

Of Counsel:

CHERYL T. ROSE
Senior Attorney
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

-28-

Signature Page to Consent Decree in U.S. v. TE Products Pipeline Company, LLC et. al (E.D. Tex.)

**FOR TE PRODUCTS PIPELINE COMPANY, LLC**

By: TEPPCO GP Inc.
    its sole manager

DATE: 08/03/2007

~~Leonard W. Mallet~~ PATRKIA A. TOT TEW
Vice-President, General Counsel & Secretary

-29-

Signature Page to Consent Decree in U.S. v. TE Products Pipeline Company, LLC et. al (E.D. Tex.)

**FOR TEPPCO CRUDE PIPELINE, LLC**

By: TEPPCO Crude GP,LLC
    Its sole manager

DATE: 08/63/2007

Patricia Totten
Vice President, General Counsel & Secretary

-30-

**ATTACHMENT A**

**DESCRIPTION OF TEPPCO'S PLANNED CLOSE INTERVAL SURVEY**

The following sets forth a description of the close interval pipe-to-soil potential survey that will be undertaken by TEPPCO:

- The survey will be conducted in accordance with TEPPCO's specification CP5-Close Interval Survey, which was provided to the EPA and the U.S. Justice Department United States on February 7, 2007. TEPPCO will make no changes to this specification or its implementation as it relates to the work described in this Consent Decree without prior written approval from EPA.

    The close interval potential survey data will be collected at normal walking pace with approximately 40 readings per 100 feet on approximately 2 ½ foot intervals.

- The CIS will be conducted such that the surveyor shall collect pipe to soil potential data directly over the pipeline. TEPPCO's stationing for above-ground appurtenances such as block valves, test points, and casing vents will be tied to the field survey stationing.

- All data collection will be performed using integrated GPS receivers. The GPS receiver will be capable of recording sub-meter, differential GPS coordinates. Sub-meter, differential GPS coordinates shall be recorded at 100 ft intervals. In addition, sub-meter differential GPS coordinates shall be taken at all points of inflection (PIs) and features along the right of way including but not limited to fence lines, road centerlines, foreign line crossings, river banks, valves, and other aboveground appurtenances.

- Test lead reconnects will be made at every new test lead, unless they are less than 500 ft. apart. Near ground, far ground and IR Drop measurements shall be taken and recorded at each reconnection point.

- The surveyor will utilize the Allegro CE Data Logger with built in voltmeter that has a minimum input impedance of $50 \times 106$ ohms.

- A report of the CIS shall include information for each survey section in accordance with Paragraph 11 and information described in TEPPCO's CP5.